## IN THE COURT OF APPEALS OF IOWA

No. 16-1457
Filed December 21, 2016

**IN THE INTEREST OF L.B., E.B., and L.B.,**
**Minor children,**

**L.B. Jr., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J.
Straka, Associate Juvenile Judge.

The father appeals from the termination of his parental rights to his three
minor children. **AFFIRMED.**

Bridget L. Goldbeck of Hughes & Trannel, P.C., Dubuque, for appellant
father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant
Attorney General, for appellee State.

Kristy L. Hefel of Public Defender's Office, Dubuque, guardian ad litem for
minor children.

Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

The father appeals the termination of his parental rights to his three children, ranging in ages from eight to three years old.[1] The father maintains the juvenile court should have transferred guardianship and custody of the children to their maternal aunt rather than terminating the father's parental rights. The father also maintains the Iowa Department of Human Services (DHS) failed to make reasonable efforts to reunite him with the children and the children's bond with him weighs against termination.

**I. Background Facts and Proceedings.**

This family has been involved with DHS on and off since 1999.[2] There have been seven founded abuse assessments, and the older two children have been previously removed from the parents care and subsequently returned.

DHS became involved in the present instance in July 2015, after receiving a report the parents were using methamphetamine and exposing the children to it. The father reportedly admitted that he had been using methamphetamine, but he claimed he quit a few weeks before DHS intervened. He stated the mother was still using methamphetamine and had said she would "slow down" but not quit. The parents refused to complete any drug testing, but the oldest and youngest child were tested, with the youngest testing positive for methamphetamine and marijuana. All three children were removed from the parents' care on July 25, 2015. The children were immediately placed with their maternal aunt.

---

[1] The mother's parental rights were also terminated; she does not appeal.
[2] The mother also has an older child, born in 1998, who is not at issue in this appeal. The earliest DHS interventions involved that child.

Between July 2015 and August 2016—when the termination hearing took place—the father never submitted to drug testing. The parents originally claimed they would only comply once testing was court-ordered, but they continued to refuse even after the already-existing court order was explained to them.[3] The father never attended therapy, and he grew angry at attempts by the care coordinator to help with parenting skills. The parents originally did well at attending the twice-weekly visits, with perfect attendance from the time of the removal until December 1, 2015. By all reports, visits between the parents and the children went well. However, after December 1, the parents attended fewer than half of the visits, including missing eight in June and attending none between July 5 and August 11. Neither parent attended the termination hearing.

In August 2016, the father's parental rights were terminated as to all three children pursuant to Iowa Code section 232.116(1)(*l*). His rights were terminated to the older two children pursuant to section 232.116(1)(f) and to the youngest pursuant to section 232.116(1)(h). The father appeals.

**II. Standard of Review.**

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

**III. Discussion.**

The father maintains the court should have transferred custody and guardianship of the children to the maternal aunt instead of terminating the father's rights. *See* Iowa Code § 232.104(2) (providing options the court must

---

[3] At one point, the parents claimed they had paid for their own hair stats with a local hospital, but when DHS checked, DHS was unable to find records to support the parents' claims.

undertake after the permanency hearing, including directing the county attorney to institute termination proceedings or transferring guardianship and custody of the child to a suitable person). In order for the court to transfer custody and guardianship, evidence must exist showing that all of the following apply:

> a. A termination of the parent-child relationship would not be in the best interest of the child.
> b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.
> c. The child cannot be returned to the child's home.

*Id.* § 232.104(3)(a)-(c).

From our de novo review of the record, there is no indication the father ever raised this issue with the juvenile court.[4] Additionally, we have found no evidence in the record suggesting the aunt was asked to be or expressed willingness to be involved with a guardianship for the children.

Even if the court had been asked to consider a guardianship, we do not believe there is evidence in the record that termination of the parent-child relationship was not in the best interests of the children, as is required by section 232.104(3)(a). The oldest two children have struggled with their parents' failure to regularly attend visits, and the oldest child attempted to harm himself after the parents missed yet another visit in the weeks preceding the termination hearing. While the father loves the children and his interactions with them are mostly positive, they are also inconsistent. Additionally, the interactions never expanded

---

[4] We note the father's petition on appeal claims that this issue has been preserved for our review but does not provide a statement explaining how it was preserved. Filing an appeal is insufficient to preserve error for our review. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice,* 55 Drake L.Rev. 39, 48 (2006). The State urges us not to consider this claim of error.

to more than six hours per week, and, according to the care coordinator, the father appeared "overwhelmed" and "emotionally wrung out" by the end of the supervised visits. The guardian ad litem, care coordinator, and social worker all stated their belief that termination was in the best interests of the children. Moreover, according to the guardian ad litem, "The children have blossomed in the care of their aunt." The aunt completed the necessary classes to be a foster parent and is willing and ready to adopt the children. In these circumstances, we cannot say the juvenile court should have ordered the transfer of custody and guardianship rather than terminating the father's parental rights.

The father claims DHS failed to make reasonable efforts to reunite him with the children. Although the father's brief provides applicable case law that requires a parent to challenge the reasonableness of services at the child-in-need-of-assistance (CINA) proceeding or to appeal the adjudication to preserve any such claim, the father appears to have done neither.[5] *See In re S.M*, No. 03-0536, 2003 WL 21362201, at *1 (Iowa Ct. App. June 13, 2003) ("[The father] failed to timely demand services. He did not challenge the reasonableness of reunification services at the CINA proceedings and did not appeal the adjudication." (citation omitted)). The father complains "there were no services offered to address any problems that were unique to [him] and his brain injury." We note the care coordinator testified about a number of things he personally did to help the father overcome issues with his memory, including: "triplicating" statements to the father; getting both the father and the mother daily planners and talking to them about writing down appointments; getting two dry erase

---

[5] The State also urges us not to consider this claim of error.

boards that were put up in the family home—one right next to the door—so announcements and reminders could be placed on them; and sending reminder texts to the parents before they needed to text him about their visits. At the hearing, the father's attorney suggested DHS should have contacted the father's doctors to see if there were additional ways to help him, but neither we nor the juvenile court have been provided with services or actions that such a doctor would have recommended beyond what DHS did. Moreover, even if the father had properly requested new or additional services, the father failed to cooperate with the services that were engaged for him. Nothing in the record suggests that the father's inability to reunite with the children was due to DHS's failure to provide necessary services. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (stating the reasonable-efforts requirement "is not viewed as a strict substantive requirement of termination," but rather requires the State to show "reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of the parent").

The father has not challenged any of the statutory grounds under section 232.116(1); any claim of error regarding the statutory grounds is waived. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."); *see also C.B.*, 611 N.W.2d at 492 ("We have long recognized an appellant must identify alleged error on appeal.").

Last, the father argues the bond he and the children share weighs against termination. *See* Iowa Code § 232.116(3)(c). Our consideration is not merely whether there is a parent-child bond, "our consideration must center on whether

the child[ren] will be disadvantaged by termination, and whether the disadvantage overcomes" the father's inability to provide for the children's developing needs. *See In re D.W.,* 791 N.W.2d 703, 709 (Iowa 2010). We do not believe it does. As the social worker testified, the children "need the stability and security that [the aunt] provides. I don't think their parents can provide that, can't provide that safety for them. The things that [the aunt] can provide for them [are] crucial for them to grow and develop and essentially be stable the rest of their lives."

We affirm the juvenile court's termination of the father's parental rights.

**AFFIRMED.**